UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN W. HOLLAND,

    Plaintiff,

v.

JO ANNE B. BARNHART, Commissioner of Social Security,

    Defendant.

CASE NO.   C05-5812RBL-KLS

REPORT AND RECOMMENDATION

Noted for August 11, 2006

    Plaintiff, John W. Holland, has brought this matter for judicial review of the denial of his applications for disability insurance and supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Honorable Ronald B. Leighton's review.

FACTUAL AND PROCEDURAL HISTORY

    Plaintiff currently is forty-seven years old.[1] Tr. 29. He has a high school education, training in asbestos removal, and past work experience as a driver, a laborer, a janitor, a custodian, a housekeeping

---

[1] Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION
Page - 1

worker, and an asbestos removal laborer. Tr. 20, 69, 100, 105.

On February 20, 2002, plaintiff filed applications for disability insurance and SSI benefits, alleging disability as of December 12, 2001, due to a hand injury, headaches, asthma, and a number of mental health problems, including depression, anxiety, and low average intellectual functioning. Tr. 19-20, 63, 99, 367. His applications were denied initially and on reconsideration. Tr. 29-31, 41, 371-73. A hearing was held before an administrative law judge ("ALJ") on August 3, 2004, at which plaintiff, represented by counsel, appeared and testified, as did a lay witness and a vocational expert. Tr. 385-453.

On December 17, 2004, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2) at step two, plaintiff had "severe" impairments consisting of right wrist pain, depression, low average intellectual functioning, and asthma;

(3) at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) at step four, plaintiff had the residual functional capacity to perform a limited range of light work, which precluded him from performing his past relevant work; and

(5) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 24, 27-28. Plaintiff's request for review was denied by the Appeals Council on November 18, 2005, making the ALJ's decision the Commissioner's final decision. Tr. 6; 20 C.F.R. § 404.981, § 416.1481.

On December 19, 2005, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#3). Specifically, plaintiff argues that decision should be reversed and remanded for an award of benefits or, in the alternative, for further administrative proceedings, because:

(a) the ALJ erred in evaluating the medical evidence in the record;

(b) the ALJ erred in assessing plaintiff's credibility;

(c) the ALJ erred in evaluating the lay witness evidence in the record;

(d) the ALJ erred in assessing plaintiff's residual functional capacity; and

(e) the ALJ erred in finding plaintiff capable of performing other work existing in significant numbers in the national economy.

The undersigned agrees that the ALJ erred in determining plaintiff to be not disabled, but, for the reasons

REPORT AND RECOMMENDATION
Page - 2

set forth below, recommends that the ALJ's decision be reversed and that this matter be remanded to the Commissioner for further administrative proceedings.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.   The ALJ Erred in Evaluating the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of

either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3d Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir.,2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

### A. Dr. Chalstrom and Dr. Neims

Plaintiff was evaluated by Dan Neims, Psy.D., in early March 2002.  Dr. Neims diagnosed plaintiff with a number of mental health impairments, including: a moderate to marked recurrent major depressive episode without psychotic features; an anxiety disorder with features of posttraumatic stress disorder, generalized anxiety, panic and agoraphobia; borderline intellectual functioning; learning disorders with respect to reading and spelling; and a personality disorder. Tr. 176.  Dr. Neims further found him to have a global assessment of functioning ("GAF") score of 50. Id.

As a result, Dr. Neims concluded plaintiff was markedly limited in his ability to: exercise judgment and make decisions; relate appropriately to co-workers and supervisors; interact appropriately in public contacts; respond appropriately to and tolerate the pressures and expectations of a normal work setting; control his physical or motor movements; and maintain appropriate behavior. Tr. 167.  Dr. Neims further found him to be moderately limited in his ability to: understand, remember and follow simple and complex

instructions; learn new tasks; perform routine tasks; and care for himself. Id. Dr. Neims made substantially similar findings in late April 2003, and again in late April 2004.[2] Tr. 242, 249.

Plaintiff also was evaluated by William J. Chalstrom, Ph.D., in late July 2002. Dr. Chalstrom diagnosed him with both an adjustment disorder with depressed mood and polysubstance dependence in sustained full remission, and assessed him with a GAF score of 65. Tr. 198. Dr. Chalstrom explained his diagnosis as follows:

> I diagnosed Adjustment Disorder With Depressed Mood rather than Major Depression, since his depressive symptoms appear to be reactions to his distress over his arm problems, his financial status, and his inability to find a job he feels he can do. He seems to be more angry than depressed at the present time, although he may be responding to his antidepressant.

Tr. 198-99. Dr. Chalstrom concluded that plaintiff's "psychological state" did "not preclude him from working," noting specifically that he retained the following work-related capabilities:

> Mr. Holland's ability to reason and understand are intact. His memory and concentration are basically intact and are at a level expected for someone with low average intelligence. His persistence was at least adequate during the testing. He seemed to have fairly good social interaction skills. His adaptive abilities are intact.

Tr. 199.

With respect to the opinions of Dr. Neims and Dr. Chalstrom, the ALJ found as follows:

> With regard to the claimant's alleged depression, I accept the opinion of consultative examiner, Dr. Chalstrom, who more precisely tested the claimant than did Dr. Neims. Dr. Neims appears to have adopted a scattergun approach with no less than nine potential diagnoses, without explanation as to their progeny. I therefore find that the claimant instead has an adjustment disorder which does not meet listing level severity or pose severe limitations. For example, I note that he is moderately social, having testified that he and his girlfriend belonged to social groups in Seattle and Tacoma. Further, according to Dr. Chalstrom, he is not vegetative. His IQ scores are at least in the mid-80s, which is indicative of a low level or near-normal functioning. His activities of daily living are unimpaired in that he admitted to performing normal daily activity, including playing video games and surfing the internet.

---

[2] Plaintiff further references an additional evaluation performed by Dr. Neims in late March 2005, that once more contained substantially similar findings. Tr. 378. That evaluation, however, was submitted for the first time to the Appeals Council, and thus could not have been considered by the ALJ. It is not clear though that the Court has the authority to review such newly submitted evidence without a showing of "good cause for having failed to produce that evidence earlier." See Mayes v. Massanari, 276 F.3d 453, 461-63 (9th Cir. 2001) (question of whether good cause is required has not been decided in Ninth Circuit). In any event, regardless of wether good cause is required, to justify remand based on Dr. Neims most recent evaluation, plaintiff also must show it is both "new" and "material" to determining disability. Id. at 462.

To be considered material, that evaluation "must bear 'directly and substantially on the matter in dispute,'" and plaintiff must demonstrate a "reasonable possibility" it "would have changed the outcome" of the hearing Id. (citation omitted). Plaintiff, however, has made no such showing. Nor does the Court find that an additional evaluation in which Dr. Neims provides essentially the same findings he provided three times previously would have changed the outcome of the hearing. As such, the Court will not consider that evidence here.

REPORT AND RECOMMENDATION
Page - 5

Tr. 24.  Plaintiff argues that the ALJ erred in rejecting Dr. Neims' opinion, and that there is no evidence to support that rejection.  The undersigned agrees the ALJ erred here.

While the ALJ certainly may choose between conflicting examining physician opinions when those opinions are based on independent clinical findings, the reasons the ALJ set forth above for choosing Dr. Chalstrom's opinion over those of Dr. Neims are not legitimate.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  First, the undersigned agrees with plaintiff that the ALJ's reference to Dr. Neims' "scattergun approach" ignores the fact that Dr. Chalstrom also diagnosed plaintiff with more than one mental health impairment.  The ALJ fails to explain how the fact that an examining physician's findings that a claimant has many diagnoses alone is indicative of a lack of clinical validity.  A review of the opinions of both Dr. Chalstrom and Dr. Neims, furthermore, fails to reveal that Dr. Chalstrom provided a substantially better explanation for his diagnoses than did Dr. Neims.  See Tr. 176-77.

The ALJ states that plaintiff was moderately social and that he belonged to social groups with his girlfriend.  However, the substantial evidence in the record largely shows that plaintiff's reported social activities were fairly minimal.  See Tr. 173-74, 197, 419-20.  For example, plaintiff told Dr. Chalstrom that he had "no friends other than his significant other," went to a dance with his significant other  "once a month," and saw his two younger children "once in a while." Tr. 197.  He told Dr. Neims that he enjoyed "limited friendships and generally" kept to himself, and that he had "limited activities and contact with others." Tr. 173-74.  More than one medical source in the record, furthemore, found him to be moderately to markedly limited in his ability to function socially.  Tr. 167, 210-11, 223, 242, 249.

While it is true that Dr. Chalstrom did not find plaintiff to be "vegetative," one need not reach that extent of mental incapacity in order to be eligible for disability benefits.  Indeed, one can suffer from very real and significant mental functional limitations without being in a vegetative state.  The same is true with respect to plaintiff's IQ scores.  Those scores merely bear on plaintiff's intellectual capacity, and do not necessarily reveal the impact of his other alleged mental functional limitations, such has his restrictions in social functioning discussed above.  Finally, although plaintiff may have admitted to spending some time playing video games and on the internet, it is far from clear he is as "unimpaired" in his ability to perform activities of daily living as the ALJ makes him out to be.  See Tr. 174, 197, 223, 418-19.

On the other hand, it also is far from clear that the ALJ was required to adopt the opinions of Dr.

Neims regarding plaintiff's mental functional limitations. While Dr. Chalstrom's diagnosis of adjustment disorder may have differed from other medical sources who assessed plaintiff with depression, the mental functional limitations Dr. Chalstrom found are consistent with other medical opinion source evidence in the record regarding plaintiff's ability to work. See Tr. 180-81, 209-12, 223. Although it may be that Dr. Chalstrom's evaluation was focused on "the present time," so to, however, were each of the opinions of Dr. Neims, as are most examining medical source opinions. Further, the fact that plaintiff has been prescribed antidepressant medication alone does not mean his alleged mental limitations are disabling. Finally, while the number of times a medical source has evaluated a claimant is one factor to be considered in evaluating medical opinions, it is only one of many factors bearing on opinion credibility.

B.  Dr. Jackson

Plaintiff was examined by Melvin Jackson, D.O., in early June 2002. Dr. Jackson opined that plaintiff "could be expected to lift/carry 20 pounds occasionally or 10 pounds frequently with the left hand and to lift/carry ten pounds occasionally and five pounds frequently with the right hand." Tr. 206. Plaintiff argues the ALJ ignored Dr. Jackson's findings regarding his right hand lifting/carrying limitations, which preclude him from being able to perform light work as found by the ALJ. In addition, plaintiff asserts the ALJ erred in limiting him to "repetitive use" of his right hand, when Dr. Jackson found him to be able to reach, handle, feel, grasp and finger only "occasionally." Tr. 24, 206.

With respect to plaintiff's first argument, the undersigned agrees the ALJ erred in failing to state why he did not adopt Dr. Jackson's limitations on his ability to lift/carry with his right hand. It is true that much of the medical evidence in the record regarding plaintiff's hand grip and upper extremity strength, including those of Dr. Jackson, is largely unremarkable. See Tr. 152-53, 160, 165, 186-88, 190-91. The ALJ, however, did not state this as a reason for not adopting Dr. Jackson's more restrictive limitations on plaintiff's ability to lift/carry with his right hand. Indeed, the ALJ provided no reasons as to why he was not adopting those limitations. As such, the ALJ erred.

On the other hand, the undersigned finds the ALJ did not err in limiting plaintiff to "no repetitive use" of his right hand, as opposed to stating plaintiff could do so only "occasionally." As pointed out by plaintiff, Dr. Jackson expanded on his opinion, by going on to state that plaintiff "should avoid frequent or prolonged activity with the right hand." Tr. 206. This qualifying statement appears to be fairly consistent with the ALJ's "no repetitive use" limitation. The ALJ's wording also is consistent with the opinion of Dr.

Peter V. Ciani, another examining physician, who stated plaintiff was "probably not suited for strenuous, repetitive use of the right arm," but could "probably function in a light to medium category so long as it did not involve significant right arm repetitive function." Tr. 165.

Finally, while Dr. David L. Deutsch, a non-examining physician, also used the term "occasional" to describe plaintiff's manipulative limitations, it appears that this term is used when the terms "constant" or "frequent" are inapplicable. See Tr. 230. That is, even if it could be said that the medical evidence in the record shows ALJ erred in not using the term "occasional" to describe plaintiff's right hand limitations, that error was harmless, as a limitation to only "occasional" use appears to be substantially the same as a limitation on "no repetitive use." See Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1197 (9th Cir. 2004) (applying harmless error standard); Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (holding ALJ committed harmless error).

## II.     The ALJ Properly Assessed Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other

testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

The ALJ made the following findings with respect to plaintiff's credibility:

> I find the claimant not wholly credible due to discrepancies in the record and his testimony. He maintained to the consultative examiners that he had quite drug use years previously and drank only limited amounts, which is inconsistent with admissions to treating physicians. He maintained that he did not socialize and did not leave the house and then testified to membership in social groups and/or clubs. He spoke in general about an inability to use his hands, but there is no suggestion of any pathology in the left hand and only relatively little limitation in the right hand given his ongoing ability to play video games and surf the internet, and engage in manipulative activities as demonstrated to Dr. Jackson. In addition, he described nearly a full range of ability to grasp, use pliers, scissors and so forth as detailed above.

Tr. 25. The undersigned finds the ALJ's findings here to be supported by substantial evidence.

Plaintiff first argues the ALJ erred in discounting his credibility due to the discrepancies in the record and his testimony, in light of the fact that no examining or treating physician found or suggested he was malingering. The fact that plaintiff has not been found to be malingering, however, does not mean the ALJ is prohibited from considering inconsistencies between his testimony and the other evidence in the record in determining his ultimate credibility. See Smolen, 80 F.3d at 1284 (ALJ may consider ordinary techniques of credibility evaluation, such as reputation for lying, prior inconsistent statements, and other testimony that appears less than candid).

Plaintiff asserts his inconsistencies about his alleged substance abuse should not taint his credibility on other issues. However, plaintiff misses the point. The fact that he has provided inconsistent statements regarding his use of illegal drugs calls into question his credibility in general. That is, such inconsistencies constitute testimony that appeared "less than candid," and therefore the ALJ was not remiss in relying on that testimony to discount plaintiff's credibility. The ALJ pointed out further inconsistencies in plaintiff's statements, in that while plaintiff had alleged an inability to use his hands, there is little to no evidence in the record showing he had any problem with his left hand. See Tr. 152-53, 160, 165, 186-88, 190-91, 204, 206, 228, 230.

In addition, while the record certainly evidences some problems with use of his right hand, plaintiff himself told Dr. Jackson that he "had no difficulty using his hands for must usual purposes." Tr. 201. Specifically, plaintiff reported that he could "grip and hold onto dishes, tools and other small objects, use a

1  pair of pliers or scissors or hammer as needed," and that he could "put together a jigsaw puzzle or play
2  bingo." Id. The only thing plaintiff said he had difficulty with was writing a letter. Id.

3        Although, as discussed above, it is not clear that the evidence in the record regarding plaintiff's
4  social functioning indicates that he has been active in social groups and/or clubs as the ALJ implied, the
5  mere fact that one of the reasons for discounting plaintiff's credibility may be improper, does not render the
6  ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in
7  the record, as it is in this case. Tonapetyan, 242 F.3d at 1148. As such, the undersigned overall finds the
8  ALJ did not err in discounting plaintiff's credibility for the reasons stated in his decision.

9  III.    The ALJ's Evaluation of the Lay Witness Evidence in the Record Was Inadequate

10       Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into
11 account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to
12 each witness for doing so." Lewis v. Apfel, 236 F.3d, 503, 511 (9th Cir. 2001). An ALJ may discount lay
13 testimony if it conflicts with the medical evidence. Id.; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir.
14 1984) (proper for ALJ to discount lay testimony that conflicts with available medical evidence). In rejecting
15 lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for
16 dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those
17 reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512. The ALJ also may
18 "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

19       Plaintiff's significant other testified as a lay witness at the hearing. With respect to that testimony,
20 the ALJ found as follows:

> [C]laimant's significant other also testified, essentially confirming the claimant's
> complaints concerning a lack of social interaction and his hand limitations. She also
> confirmed their participation in social groups, noting that such participation had ceased a
> couple years ago. In general, her testimony seems reasonably credible, however did
> little to establish the claimant's disability in view of the lack of objective medical findings
> and claimant's inconsistent behavior.

Tr. 25. Plaintiff first asserts that lay witness testimony cannot be rejected simply because the claimant is
found to be not credible, and, as such, the ALJ's above findings were improper, citing to Dodrill v. Shalala,
12 F.3d 915, 919 (9th Cir. 1993).

      Plaintiff's reliance on Dodrill, however, is misplaced. In Dodrill, the Ninth Circuit did reverse the
ALJ's decision to discount the credibility of the lay witness statements in the record based on his finding

REPORT AND RECOMMENDATION
Page - 10

that the claimant also was not credible. Id.  This was because the ALJ "may have been under the mistaken impression that lay witnesses can never make independent observations of the claimant's pain and other symptoms." Id.  The Court of Appeals specifically noted though, that such a determination may be proper with respect to those lay witnesses whose statements do "not fully explain sufficiently when and to what extent they had the opportunity to observe" the claimant. Id. at 918.

Nevertheless, it is not clear from the ALJ's findings that his reason for rejecting the lay witness testimony based on plaintiff's inconsistent behavior, was because her testimony did "not fully explain sufficiently when and to what extent" she "had the opportunity to observe" plaintiff. Id.  Plaintiff further challenges the ALJ's findings due to "the lack of objective medical findings," asserting that her testimony was consistent with the findings of Dr. Chalstrom and Dr. Jackson.  As noted above, inconsistencies with medical evidence in the record is a proper basis for rejecting lay witness testimony.  Here again, however, the ALJ fails to explain what evidence is inconsistent with the witness' testimony.  Although the ALJ need not provide "specific and legitimate" reasons for disregarding lay witness testimony, the Court must have some a guidance as to the particular evidence on which the ALJ relies.

IV.   The ALJ Erred in Assessing Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id.  It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id.  However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Here, the ALJ assessed plaintiff with the following residual functional capacity:

> [T]he claimant retains the residual functional capacity for a limited range of light work. The limitations below light include standing and walking for 30 minutes at a time, up to 4-5 hours total in a workday secondary to his perception of hip problems, no limits on sitting or range of motion. Given the difficulties with his right hand, I further limited him to no repetitive use of this hand, with slightly reduced grip (not manipulation per his testimony). Based on his limited intellectual functioning, I limited him to simple, repetitive structured work with no complex written instructions or schematics. Finally, given his pulmonary difficulties, I included a limitation to a clean air environment without exposure to airborne irritants.

Tr. 24.

Plaintiff argues the above residual functional capacity assessment is legally deficient in that the ALJ failed to assess whether he was capable of working on a regular and continuing basis. In support of this argument, plaintiff asserts that he suffers from pain, fatigue and mental impairments, and points to the fact that Dr. Chalstrom noted he worked at a reduced pace. Tr. 197. Plaintiff, however, cites to no evidence in the record, other than his own allegations, to indicate that his alleged pain and fatigue, as well as his mental impairments, have resulted in an inability to work on a regular and continuing basis. As explained above, furthermore, the ALJ properly discounted plaintiff's testimony. With respect to Dr. Chalstrom's notation, that was a comment on his pace in completing the psychological testing, and does not in itself specifically or necessarily bear on his ability to work full-time.

Plaintiff's second argument on this issue, however, has more merit. He asserts the ALJ failed to consider all of the medical and vocational evidence in the record concerning his impairments. Specifically, plaintiff argues the ALJ improperly ignored the findings of Dr. Jackson and Dr. Neims. With respect to Dr. Jackson, as discussed above, the ALJ erred in considering the limitations he placed on plaintiff's ability to lift and/or carry with his right hand. In addition, also as discussed above, the ALJ's reasons for rejecting the opinions of Dr. Neims were inadequate. Plaintiff also is correct in noting the ALJ did not provide any reasons for why he did not adopt the "moderate" to "marked" limitations in dealing with the public and working with or in proximity to others respectively found by Janis Lewis, Ph.D. Tr. 209-10. As such, it is not clear that the ALJ's assessment of plaintiff's residual functional capacity reflects all of his mental and physical impairments and limitations.

Plaintiff further argues the ALJ erred in ignoring his inability to compute simple math problems and spell at the third and fourth grade levels. Although the record indicates plaintiff has had low scores in the

areas of math and spelling, no medical source in the record specifically has found plaintiff has suffered from any work-related limitations as a result thereof. Accordingly, the ALJ was not required to include any such limitations in his assessment of plaintiff's residual functional capacity. In addition, plaintiff's reliance on 20 C.F.R. § 404.1520a(e) is misplaced. The degree of mental functional limitation rating technique mandated by that regulation applies only at step two of the disability evaluation process, and is used solely to determine the severity of a claimants mental impairments. As such, because plaintiff has not challenged the ALJ's step two findings, this argument must fail.

Lastly, plaintiff argues the ALJ failed to consider the side effects of his medication. Once more, however, plaintiff has pointed to no evidence in the record, other than his own allegations, to show that any such side effects have had a significant effect on his ability to perform work-related tasks. Indeed, the Court's own review of the record also fails to find any. In particular, the record for the most part fails to indicate the presence of severe side effects, or that any of plaintiff's treating or examining medical sources found any significant work-related limitations as a result of such side effects. See Tr. 171-72, 181-83, 202, 262, 265. Accordingly, plaintiff's argument on this issue fails as well.

V.  The ALJ Erred in Finding Plaintiff Capable of Performing Other Jobs Existing in Significant Numbers in the National Economy

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines. Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir.

2001).

The ALJ posed a hypothetical question to the vocational expert that was substantially similar to the residual functional capacity with which plaintiff was assessed. Tr. 438-39. In response, the vocational expert testified that there were other jobs plaintiff could do. Tr. 441-42. Based on the vocational expert's testimony, the ALJ found plaintiff capable of performing other work existing in significant numbers in the national economy. Tr. 26. Plaintiff argues, however, that because the ALJ's residual functional capacity assessment was erroneous, the hypothetical question was deficient as well. The undersigned agrees. That is, because, as discussed above, it is not clear plaintiff's residual functional capacity assessment included all of his impairments and limitations, it is not clear the hypothetical question did as well.

Plaintiff further argues that when the mental functional limitations found by Dr. Neims and the inability to constantly use his right hand found by Dr. Jackson were posed to the vocational expert by his counsel, the vocational expert testified that such limitations would preclude all employment. As discussed above, however, it is not certain that the ALJ was required to adopt the mental functional limitations found by Dr. Neims. It is true that the vocational expert did testify that if an individual "could not do any constant movement of the wrist in any position whatsoever," that individual would not be able to perform any of the jobs identified. Tr. 443-44. However, the ALJ did not define the term "repetitive use," nor is it clear from the record that he would be required to adopt the definition used by plaintiff's counsel and the vocational expert at the hearing. As such, plaintiff's argument that the record supports a finding that he is incapable of performing any other work cannot be sustained at this time.

VI.   This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d

1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

As discussed above, plaintiff argues the ALJ erred in evaluating the opinions of Dr. Neims and Dr. Jackson, and in assessing his credibility and that of the lay witness testimony in the record. Plaintiff thus further asserts that because the ALJ erred in evaluating and assessing such evidence, that evidence must be credited as true, and this matter should be reversed and remanded to the Commissioner for an award of benefits. For the reasons set forth below, however, the undersigned finds remand for further administrative proceedings is more appropriate here, because issues still remain as to plaintiff's mental and physical limitations, his residual functional capacity, and his ability to perform other jobs existing in significant numbers in the national economy.

It is true that where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of law." Lester, 81 F.3d at 834 (citation omitted). However, where the ALJ is not required to find the claimant disabled on crediting of evidence, this constitutes an outstanding issue that must be resolved, and thus the Smolen test will not be found to have been met. Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003). As discussed above, it is not clear that the ALJ was required to adopt the mental functional limitations found by Dr. Neims or the lifting/carrying limitations found by Dr. Jackson. That issue, instead, must be resolved through further administrative proceedings on remand.

It also is true the Ninth Circuit has held that remand for an award of benefits is required where the ALJ's reasons for discounting the claimant's credibility are not legally sufficient, and "it is clear from the record that the ALJ would be required to determine the claimant disabled if he had credited the claimant's testimony." Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003). Here though, as discussed above, the ALJ did not err in discounting plaintiff's credibility. Lastly, in some situations, improperly discredited lay testimony may be "credited as true" as well. See Schneider v. Barnhart, 223 F.3d 968, 976 (9th Cir. 2000). (finding that when lay evidence rejected by ALJ is given effect required by federal regulations, it became clear claimant's limitations were sufficient to meet or equal listed impairment).

With respect to the ALJ's treatment of the lay witness testimony in this case, however, courts do have "some flexibility" in how they apply the "credit as true" rule. Connett, 340 F.3d at 876. Here, the overall evidence in the record fails to clearly establish that plaintiff is as disabled as he alleges, particularly in light of his own credibility issues. Indeed, as discussed above, the ALJ's evaluation of the lay witness testimony was deficient not because the reasons the ALJ set forth were improper, but rather because those reasons were insufficiently explained. As such, the undersigned finds further administrative proceedings are needed to resolve the outstanding issues in this case.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **August 11, 2006**, as noted in the caption.

DATED this 19th day of July, 2006.

Karen L. Strombom
United States Magistrate Judge